IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **FREDDIE SAMS,** | : |
| | : Case No. 2:19-cv-05330 |
| **Plaintiff,** | : |
| | : **CHIEF JUDGE ALGENON L. MARBLEY** |
| v. | : |
| | : **Magistrate Judge Vascura** |
| **FRANKLIN COUNTY, OHIO et al.** | : |
| | : |
| | : |
| **Defendants.** | : |

## OPINION & ORDER

This matter is before the Court on two motions: (1) a Motion to Dismiss by Defendants Naphcare, Inc. ("Corporate Medical Defendant"), Brook New-Berry, Elizabeth Levering, Deddeh Sumo, and Elizabeth Flores ("Nurse Defendants") (collectively "Medical Defendants") (ECF No. 66); and (2) a Motion to Dismiss by Defendants Sergeant Jay Muncy and Major Mychal Turner ("Officer Defendants") (ECF No. 68).  For the reasons set forth below, the Court **GRANTS IN PART** and **DENIES IN PART** each of the Defendants' Motions to Dismiss (ECF Nos. 66, 68).

### I.     BACKGROUND

#### A.  Factual Background

On November 18, 2017, Freddie Sams went to the hospital complaining of a stab wound, and an injured hand and wrist.  (ECF No. 65 at 4).  Before seeking treatment for his injuries, Sams called the Franklin County Sheriff's Department ("FCSD") to report his assailant.  (*Id.*).  As medical professionals assisted Sams, FCSD deputies arrived.  (*Id.*).  While at the hospital, FCSD deputies arrested Sams for domestic violence.  (*Id.*).

1

For just over three weeks, Sams was incarcerated in Franklin County correctional facilities. (*Id.* at 5). There, Sergeant Jay Muncy and Major Mychal Turner oversaw, in part, the medical needs of detainees. (*Id.* at 4). Additionally, those officers were assisted by medical contractor Naphcare, Inc., and its nurses Brooke New-Berry, LPN; Elizabeth Levering, LPN; Deddeh Sumo, LPN; and Elizabeth Flores, LPN. (*Id.*). Before his incarceration, hospital staff gave Sams as well as the Medical and Officer Defendants instructions concerning Sams's need to receive additional medical treatment and other information regarding the care of his injuries. (*Id.* at 5). While incarcerated, Sams repeatedly requested medical treatment, only to be refused care. (*Id.*).

According to Defendants' own records, Defendants failed to address Sams's medical treatment for several reasons. (*Id.* at 5–6). First, the Officer Defendants asserted that treating Sams was either inconvenient or conflicted with their additional duty to feed other prisoners. (*Id.* at 5). Second, Nurse Defendants were either changing shifts during such requests or otherwise did not want to see Sams, also citing inconvenience. (*Id.* at 5–6). Finally, Defendants not only failed to provide medical attention but also actively prevented Plaintiff from attending required follow-up doctor appointments. (*Id.* at 6). In total, according to Sams, Defendants' refusal to treat Sams caused him to suffer permanent injury: disfigurement, infection, and the loss of use of his hand, wrist, and fingers. (*Id.*).

What's more, Sams asserts that Defendants behaved this way pursuant to a policy of deliberate indifference to inmates with medical needs. (*Id.* at 7). Sams argues that Nurse and Officer Defendants ignored Sams's physical injuries because they were neither adequately trained, hired, supervised nor disciplined for providing such inferior care. (*Id.* at 6–7). This suit followed.

### B. Procedural Background

Plaintiff filed his initial complaint on December 4, 2019, asserting injuries sustained while incarcerated in Franklin County, Ohio pursuant to 42 U.S.C. § 1983. (ECF No. 1). Plaintiff alleged

claims against Franklin County, the Franklin County Sherriff's Department, Naphcare, Inc., and various John and Jane Does. (*Id.*). On March 27, 2020, Franklin County and the Franklin County Sherriff's Department filed a motion to dismiss. (ECF No. 11). The Court then ordered Plaintiff to identify the John and Jane Does he filed suit against in his original complaint. (ECF No. 13). Because the Court found that the initial and subsequent complaints (ECF Nos. 1, 22) were substantively similar save for an additional allegation "naming the individual Defendants," the Court ruled on the County's and Sheriff Department's motion to dismiss (ECF No. 11) in its November 2, 2020 Opinion and Order. (ECF No. 41). There, this Court dismissed with prejudice Plaintiff's claims against the two county entities. (*Id.*).

Following that Opinion and Order (ECF No. 41), Plaintiff filed his Second Amended Complaint on March 22, 2021. (ECF No. 65). Subsequently, the Medical Defendants, and the Officer Defendants filed their motions to dismiss. (ECF No. 66, 68). Plaintiff filed his Memorandum Contra to All Defendants' Motions to Dismiss (ECF No. 71), and the Defendants replied (ECF Nos. 74, 75). Defendants' motions are now ripe for review.

## II. STANDARD OF REVIEW

The defendants moved to dismiss under Federal Rule of Civil Procedure 12(b)(6). Under modern federal pleading standards, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint will survive a motion to dismiss if the plaintiff alleges facts that "state a claim to relief that is plausible on its face" and that, if accepted as true, are sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint must therefore "contain either direct or inferential allegations respecting all material elements to sustain a recovery under some viable theory." *Edison v. Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007).

3

In assessing the sufficiency and plausibility of a claim, courts "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). Thus, dismissal is appropriate only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Guzman v. U.S. Dep't of Homeland Sec.*, 679 F.3d 425, 429 (6th Cir. 2012) (quotation omitted).

### III.  LAW & ANALYSIS

Defendants move to dismiss Plaintiff's Complaint for a failure to state a claim upon which relief can be granted. Plaintiff asserts that Defendants were deliberately indifferent to his serious medical needs in violation of the Eighth and Fourteenth Amendments.

"To prevail on a cause of action under § 1983, a plaintiff must prove '(1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under the color of state law.'" *Shadrick v. Hopkins Cty., Ky.*, 805 F.3d 724, 736 (6th Cir. 2015) (quoting *Jones v. Muskegon Cnty.*, 625 F.3d 935, 941 (6th Cir. 2010)). Although the Constitution "does not mandate comfortable prisons," it also does not permit inhumane ones. *Farmer v. Brannan*, 511 U.S. 825, 832 (1994) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981)). It is well-settled that "the treatment a prisoner receives in prison and the conditions under which he [or she] is confined are subject to the scrutiny under the Eighth Amendment." *Helling v. McKinney*, 509 U.S. 25, 31 (1993). Similarly, pretrial detainees are protected from cruel and unusual punishment by the Due Process Clause of the Fourteenth Amendment. *Winkler v. Madison Cnty.*, 893 F.3d 877, 890 (6th Cir. 2018). These constitutional provisions protect incarcerated people from "deliberate indifference" to their serious medical needs. *Farmer*, 511 U.S. at 835.

Traditionally, to sustain liability under the deliberate indifference standard, a plaintiff must satisfy an objective component, which measures the seriousness of the medical need, and a

4

subjective component, which measures the knowledge and actions of the defendants. *Id.* at 838–39; *Winkler*, 893 F.3d at 890. Under this standard, defendants were required to "know[] of and disregard an excessive risk to inmate health or safety; the [defendants] must both be aware of facts from which the inference could be drawn that a substantial risk of harm exists, and [they] must also draw the inference." *Farmer*, 511 U.S. at 837. In light of the Sixth Circuit's decision in *Brawner v. Scott Cty., Tennessee*, a modified approach is now taken in place of the subjective component. 14 F.4th 585, 596 (6th Cir. 2021).

In *Brawner*, the Sixth Circuit found that examining claims "by convicted prisoners under the Eighth Amendment and claims brought by pretrial detainees under the Fourteenth Amendment" under the same framework is, "no longer tenable." *Id.* Driven by the Supreme Court's decision in *Kingsley v. Hendrickson*, 576 U.S. 389 (2015), the Sixth Circuit revisited the subjective portion of the deliberate-indifference analysis for pretrial detainees. Although "[m]ere negligence is insufficient," the Court held that "[a] defendant must have not only acted deliberately (not accidentally), but also recklessly 'in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known.'" *Id.* That is, a plaintiff must prove "something akin to reckless disregard." *Id.* at 596–97 (citing *Castro v. County of Los Angeles*, 833 F.3d 1060, 1071 (9th Cir. 2016) (en banc)). Thus, to meet his burden under the new test showing that the Defendants "violated [his] constitutional right to adequate medical care, [Plaintiff] needed to" allege: "(1) that []he had an objectively serious medical need; and (2)" the Defendants' "action (or lack of action) was intentional (not accidental) and" that Defendants "either (a) acted intentionally to ignore [Plaintiff's] serious medical need, or (b) recklessly failed to act reasonably to mitigate the risk the serious medical need posed to [Plaintiff], even though a reasonable official in [the

5

Defendants'] position would have known that the serious medical need posed an excessive risk to [Plaintiff's] health or safety." *Id* at 597.

### A.  Objective Component

First, "[a] serious medical need is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008) (quoting *Blackmore v. Kalamazoo*, 390 F.3d 890, 895 (6th Cir. 2004)). "Only if a prisoner proves this objective element must courts consider the second … part of the deliberate-indifference test." *Phillips v. Tangilag*, 14 F.4th 524, 535 (6th Cir. 2021).

Here, Plaintiff asserts that "[b]efore being transported to the Franklin County correctional facilities, Plaintiff was given medical instructions regarding the ***need*** to attend, follow up with doctors' appointments[,] and for the proper treatment of [his] fractures and stab wound." (ECF No. 65 at 4–5) (emphasis added).  Although Plaintiff does not specify that he saw a physician when attended to at the hospital, his allegations concerning his serious medical need are sufficient to pass muster at the pleading stage. *See Directv, Inc.*, 487 F.3d at 476.  Furthermore, no defendant argues that Plaintiff did not suffer a serious medical need.  (*See* ECF Nos. 66, 68).  Instead, the parties spend the lion's share of their briefing on the second component of the deliberate-indifference inquiry.  (*See id.*).  Thus, for purposes of the motion to dismiss, Plaintiff has made sufficient factual allegations to establish that he had a serious medical need to satisfy the threshold inquiry under the deliberate-indifference standard.

### B.  Reckless Disregard

*1. Nurse and Officer Defendants, in Their Personal Capacity ("Individual Defendants")*

Under *Brawner*, Plaintiff must allege that the Defendant's "action (or lack of action) was intentional (not accidental) and" that the Defendant "either (a) acted intentionally to ignore

6

[Plaintiff's] serious medical need, or (b) recklessly failed to act reasonably to mitigate the risk the serious medical need posed to [Plaintiff], even though a reasonable official in [the Defendant's] position would have known that the serious medical need posed an excessive risk to [Plaintiff's] health or safety." *Brawner*, 14 F.4th at 597.

Here, the Individual Defendant's intentional "action (or lack of action)," as alleged by Plaintiff, is the refusal of medical treatment over his three-week detention.[1] *Id.* Further, Plaintiff alleges that the Individual Defendants knew or should have known that they failed to act reasonably to mitigate the risk the serious medical need—his fractured hand, wrist, and stab wound—posed to Plaintiff. (ECF No. 65 at 5–6).

To support his allegation of intentional refusal of medical treatment, Plaintiff alleges that he told the Individual Defendants that he required medical attention more than eight times. (*Id.*). Although it is somewhat uncertain whether Plaintiff is alleging that he notified the entire *group* of Individual Defendants eight or more times or instead, that he told *each* Individual Defendant eight or more times, this Court must resolve such ambiguity by "constru[ing] the complaint in the light most favorable to the plaintiff, accept[ing] his allegations as true, and draw[ing] all reasonable inferences in favor of the plaintiff." *Directv, Inc.*, 487 F.3d at 476. To that end, while it is possible to read Plaintiff's Complaint as alleging that he told the group of Individual Defendants a total of eight times, it is at least as equally reasonable that the alternative is true. (*See* ECF No. 65 at 5–6). This conclusion becomes more compelling when considering the circumstances of Plaintiff's

---

[1] According to the Medical Defendants, Plaintiff is not asserting a complete absence of medical treatment, but instead inadequate medical treatment. (ECF No. 66 at 4). In general, this is the thrust of the Medical Defendants' argument: Plaintiff received care, just not his preferred level of care. For support, Medical Defendants point to paragraph 28 of the Second Amended Complaint (ECF No. 65 at 5–6). (*Id.*). It appears that the Medical Defendants have mischaracterized Plaintiff's allegations. Although Plaintiff does describe the care provided by the Medical Defendants' as "substandard," he does so in the context of explaining a policy, custom, or practice generally, not necessarily the care he experienced. Thus, at best, Medical Defendants take Plaintiff's description out of context and rely too heavily on Plaintiff's word choice.

confinement. Plaintiff's pleas for medical attention occurred over a span of more than three weeks—the length of his detention. (*See id.* at 5). Even assuming that the Individual Defendants did not work a shift every day of that period, it is entirely plausible that they worked eight shifts over a twenty-one-day period. Further, assuming Plaintiff requested assistance at the conservative rate of once to each Individual Defendant during their shift, it is entirely plausible that he made his requests over forty-eight times during his three-week detention. Accordingly, for the purposes of the motions to dismiss, Plaintiff appears to allege that he told the Individual Defendants each eight or more times that he required medical assistance. (*See id.* at 5–6).

Defendants lodge a series of attacks against Plaintiff's allegations, each asserting that Plaintiff's claims are too vague. First, the Officer Defendants argue that Plaintiff's claim is fatally flawed because it fails to allege any personal involvement in the complained of action (or inaction). (ECF No. 68 at 4). To support this proposition, the Officer Defendants cite three Sixth Circuit decisions, one of which is unpublished. (*Id.*) (citing *Bennett v. Schroeder*, 99 Fed. Appx. 707, 712–13 (6th Cir. 2004); *Salehpour v. University of Tennessee*, 159 F.3d 199, 206 (6th Cir. 1998), cert. denied, 526 U.S. 1115 (1999); *Copeland v. Machulis*, 57 F.3d 476, 482 (6th Cir. 1995)). The rule to which the Officer Defendants refer—a corollary of the prohibition on theories of liability based solely on respondeat superior—is generally correct. *See infra* III.B.2. Yet, the citation of this rule does not meet Plaintiff's allegation that Officer Defendants and Nurse defendants *individually* ignored Plaintiff's request for medical attention. (ECF No. 65 at 5–6). Next, Nurse Defendants resist the characterization that they were ignoring Plaintiff at all. (ECF No. 66 at 6). Instead, they maintain that they were too busy doing other things. (*Id.*) To recite such an argument is to reveal its tautological nature. Importantly, Plaintiff makes additional allegations that further support his theory that the Individual Defendants knew or should have known about his serious medical need.

8

First, Plaintiff alleges that the Individual Defendants did not simply ignore his medical requests, but instead actively impeded his medical treatment and rejected his pleas for medical assistance. Such conduct, of course, supports an inference that the Individual Defendants actually knew of Plaintiff's serious medical need. When Plaintiff requested medical attention for his hand, wrist, and stab wound, Individual Defendants, according to Plaintiff, offered several reasons why they refused to treat him. (ECF No. 65 at 5–6). As to the Officer Defendants, they memorialized their unwillingness to treat the Plaintiff by stating that it was either inconvenient or they were too busy feeding prisoners. (*Id.*). As to the Nurse Defendants, they were either changing shifts or found that treating Plaintiff was inconvenient. (*Id.*). While notification alone of a serious medical need supports that the Individual Defendants should have known of the risk, the consideration and rejection of the request for assistance supports that the Individual Defendants actually knew.

Second, Plaintiff alleges that the Individual Defendants affirmatively canceled his prescheduled doctor's appointment. (*Id.* at 6). Plaintiff states that because he was arrested at the hospital while seeking treatment for the same wounds he now complains have been exacerbated, the Individual Defendants actually received the same medical information he told them verbally. (*See id.* at 5). Whether this allegation is lodged with enough specificity to implicate the Individual Defendants is unclear.[2] Yet, the vitality of this allegation—whether the Individual Defendants all received this information from the hospital—becomes less significant when considering that they took the additional affirmative actions that support their knowledge of his medical condition. Plaintiff alleges that the Defendants canceled his previously scheduled follow-up doctor's appointment. (*Id.* at 6). Although cancelling or rescheduling a previously made appointment, on

---

[2] Here, Plaintiff simply states that the hospital that treated him provided Individual Defendants with medical information, without explaining how each Individual Defendant received that information.

its own, may not raise concerns, doing so without providing for an appropriate medical substitute is problematic. Moreover, to cancel an appointment requires knowledge of the appointment.

Next, in addition to asserting that the Individual Defendants actually knew of the risk they exposed Plaintiff, Plaintiff makes several allegations that support the inference that the Individual Defendants should have known of the risk posed to Plaintiff. The strongest, of course, is his own personal notification of all Individual Defendants more than eight times. (ECF No. 65 at 5–6). Further, Plaintiff states that his wounds became infected and began to smell before he was released from detention—providing additional notice to the Individual Defendants of his worsening condition. (*Id.*). In sum, Plaintiff has claimed enough to demonstrate that under these facts, the Individual Defendants should have known that failing to render *any* treatment would exacerbate his serious medical condition. *See Schopper v. Cty. of Eaton*, No. 1:21-CV-731, 2021 WL 5194809, at *4 (W.D. Mich. Nov. 9, 2021) (finding that the Plaintiff stated a claim of deliberate indifference under new *Brawner* standard where individual defendants failed to provide any medical care); *Reid v. Hopkins Cty. Fiscal Ct.*, No. 4:21CV-P14-JHM, 2021 WL 5435241, at *3–4 (W.D. Ky. Nov. 19, 2021) (same).

Defendants rejoin by pointing to the legacy "subjective component," now reserved solely for prisoner plaintiffs under the Eighth Amendment. *See Brawner*, 14 F.4th at 596. Of course, this argument is unavailing to the extent it attempts to subject Plaintiff's pleading to the higher standard of subjectivity. *See id.* Additionally, the Officer Defendants point to their ability to rely on the discretion of their medical professional counterparts: the nurses. (ECF No. 74 at 4). For support, Officer Defendants rely on one out-of-circuit and two in-circuit decisions. (*Id.*) (citing *Spears v. Ruth*, 589 F.3d 249, 255 (6th Cir. 2009); *McGraw v. Sevier Cty., Tennessee*, 715 F. App'x 495, 497 (6th Cir. 2017); *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004)). This argument,

10

however, is a non-starter. Here, Plaintiff does not complain about the treatment decisions made by nurses; instead he complains of absolutely no engagement by these medical professionals. (*See* ECF No. 65 at 5–6). Thus, it would appear the Officers are attempting to create a false equivalence between the outright refusal to treat a pre-trial detainee and an otherwise considered medical decision. As a last-ditch effort, the Officer Defendants attempt to attack Plaintiff's prescribed treatment as being too vague to be adhered. (ECF No. 74 at 4). Again, however, if the Officer or Nurse Defendants engaged with Plaintiff's medical needs, this argument is at least plausible. Instead, because Plaintiff argues complete refusal to treat, this argument falls flat.

In addition to being told more than eight times, the Individual Defendants did or should have taken notice of Plaintiff's worsening medical condition. Not once during the more than three-week period did Plaintiff receive medical treatment. Indeed, Individual Defendants ignored Plaintiff's requests so many times that his "wounds smelled [and] became infected." Further, in addition to being recklessly ignored, the Individual Defendants canceled his pre-incarceration scheduled medical appointment without providing Plaintiff with an appropriate substitute. Taken together, Plaintiff has alleged facts that show that the Individual Defendants intentional refusal of medical treatment was in reckless disregard to the risk posed by refusing such treatment. Thus, Plaintiff has stated a claim of "Deliberate Indifference" under the Fourteenth Amendment for pretrial detainees under *Brawner*. *See Brawner*, 14 F.4th at 596. Accordingly, the Individual Defendants', in their individual capacity, Motions to Dismiss for Failure to State a Claim is **DENIED**.

### 2. Corporate Defendant

Plaintiff also asserts a claim of deliberate indifference against Defendant Naphcare, Inc. Yet, "it is well-settled that a corporation cannot be held liable in a § 1983 suit under the theory of vicarious liability." *King v. Advanced Corr. Healthcare, Inc.*, No. 2:21-CV-11369, 2021 WL

3053392, at *3 (E.D. Mich. July 20, 2021) (citing *Monell v. Department of Social Services of New York*, 436 U.S. 658, 694 (1978); *Street v. Corrections Corp. of Am.*, 102 F.3d 810, 817–18 (6th Cir. 1996)); *see also Winkler*, 893 F.3d at 904 ("'Like a municipality, a government contractor cannot be held liable on a *respondeat superior* theory,' but rather 'for a policy or custom of that private contractor.'") (quoting *Johnson v. Karnes*, 398 F.3d 868, 877 (6th Cir. 2005)). Instead, "to state a claim of deliberate indifference against this Defendant, Plaintiff must plead a claim of a specific policy, practice, or custom of [Defendant] that 'directly caused [him to suffer] a deprivation of federal rights.'" *King*, 2021 WL 3053392, at *3 (quoting *Starcher v. Corr. Med. Sys., Inc.*, 7 F. App'x 459, 465 (6th Cir. 2001). To that end, a Plaintiff may satisfy this pleading requirement by proving: "(1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations." *Griffith v. Franklin Cty., Kentucky*, 975 F.3d 554, 581 (6th Cir. 2020) (citing *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013)). Finally, while pleading "does not require 'detailed factual allegations,' it does require more than 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *See Shoup v. Doyle*, 974 F. Supp. 2d 1058, 1084 (S.D. Ohio 2013) (citing *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009)).

As a threshold matter, the "Sixth Circuit has recognized that a failure-to-supervise claim that is distinct from a failure-to-train claim is uncommon." *H.M. v. Bd. of Educ. of the Kings Loc. Sch. Dist.*, 117 F. Supp. 3d 992, 1010 (S.D. Ohio 2015) (citing *Mize v. Tedford*, 375 Fed. Appx. 497, 500 (6th Cir. 2010)). Similarly, a theory of failure to discipline is closely related to the theory of failure to train or supervise. All told, the Sixth Circuit has stated that "a failure of a supervisory

official to supervise, control, or train the offending individual [employees] is not actionable absent a showing that the official either encouraged or in some way directly participated in it." *Leach v. Shelby Cty. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989) (quoting *Hays v. Jefferson Cty., Ky.*, 668 F.2d 869, 872 (6th Cir. 1982)). Hence, "[a]t a minimum a plaintiff must show that the official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending [employees]." *Id.* (quoting *Hays*, 668 F.2d at 872).

For municipality liability to attach in this context, Plaintiff must show: "(1) the training or supervision was inadequate for the tasks performed; (2) the inadequacy was the result of the [county's] deliberate indifference; and (3) the inadequacy was closely related to or actually caused the injury." *Sollenberger v. Sollenberger*, 173 F. Supp. 3d 608, 626 (S.D. Ohio 2016) (quoting *Ellis v. Cleveland Mun. Sch. Dist.*, 455 F.3d 690, 700 (6th Cir. 2006) (internal quotations omitted)). Importantly, "failing to sufficiently plead one element is adequate for dismissal." *Id.* at 627. Here, Plaintiff "has failed to make any factual allegations explaining how [Naphcare] failed to train," supervise, discipline, or hire its employees. *Id.* Thus, even if all factual allegations are true, Plaintiff has failed to state a claim for relief against NaphCare with regard to an alleged policy, practice or custom that results in a failure to train, supervise, or discipline its employees.

Moreover, Plaintiff does not point to any "*specific* policy, practice, or custom adopted by" NaphCare Inc. "with respect to medical services provided to jail inmates." *King*, 2021 WL 3053392, at *3. (emphasis added); (*see* ECF No. 65 at 7) ("[A]ll Defendants have in this case and in the past had … a policy, habit, and or/custom of being deliberately indifferent."). "In the absence of any allegations connecting the alleged inadequate medical care for Plaintiff by the individually named Defendants to a specific policy, practice, or custom, Plaintiff fails to state a

13

claim against" such Defendants. *King*, 2021 WL 3053392, at *3. As such, the Motion to Dismiss with respect to Defendant Naphcare Inc. is **GRANTED**.

### 3. Individual Defendants in their Official Capacity

Finally, "[c]laims under 42 U.S.C. § 1983 are, in all respects other than name, claims against the entity, not against individuals in their official capacity." *Day v. DeLong*, 358 F. Supp. 3d 687, 704 (S.D. Ohio 2019), *reconsideration denied*, No. 3:16-CV-437, 2019 WL 1081348 (S.D. Ohio Mar. 7, 2019) (citing *Kentucky v. Graham*, 473 U.S. 159, 166 (1985)). Hence, "[o]fficial-capacity suits ... 'represent only another way of pleading an action against an entity of which an officer [or employee] is an agent.'" *Id*. (citing *Hafer v. Melo*, 502 U.S. 21, 25 (1991) (internal citation omitted); *Essex v. County of Livingston*, 518 Fed. App'x 351, 354 (6th Cir. 2013)). Thus, "[w]here the governmental entity itself is also a defendant, a claim against an official or employee of the entity in their official capacity is superfluous or redundant." *Id.* (citing *Slocum v. City of Cleveland Heights*, USDC Case No. 1:14-CV-00532, 2014 U.S. Dist. LEXIS 83700, *8 (N.D. Ohio June 19, 2014)).

Here, Plaintiff has asserted claims against the Officer and Nurse Defendants in their personal as well as in their official capacity. (*See* ECF No. 65 at 3). Moreover, because Plaintiff has also asserted claims against those Defendants' employers—Franklin County, Franklin County Sherriff's Office, and NaphCare, Inc.—"a claim against an official or employee of the entity in their official capacity is superfluous or redundant." *Day*, 358 F. Supp. 3d at 704. For one, Plaintiff's claims against Franklin County and the Franklin County Sheriff's Office have already been dismissed with prejudice via the November 2, 2020 Order and Opinion (ECF No. 41). Accordingly, claims against the Officers in an official capacity have already been disposed. As such, the Motion to Dismiss with respect to the Officer Defendants in their official capacity has already been decided. For another, Plaintiff's claims against NaphCare Inc. are also dismissed.

*See supra* III.B.2. Therefore, the Motion to Dismiss with respect to the Nurse Defendants in their official capacity is **GRANTED**.

### C. Qualified Immunity

Officer Defendants argue that Plaintiff's claims should be dismissed based on the affirmative defense of qualified immunity. (ECF No. 68 at 6). Plaintiff disagrees. (ECF No. 71 at 8).

Foremost, "it is generally inappropriate for a district court to grant a 12(b)(6) motion to dismiss on the basis of qualified immunity." *Wesley v. Campbell*, 779 F.3d 421, 433 (6th Cir. 2015). The Sixth Circuit recognizes this proposition of law even though "an officer's "entitle[ment] to qualified immunity is a threshold question to be resolved at the earliest possible point." *Id.* (citing *Vakilian v. Shaw*, 335 F.3d 509, 516 (6th Cir. 2003)). Resolving the tension between these two propositions is the Sixth Circuit's finding that the earliest possible point "is usually summary judgment and not dismissal under Rule 12." *Id.* at 433–34 (citing *Evans–Marshall v. Bd. of Educ. of Tipp City Exempted Village Sch. Dist.*, 428 F.3d 223, 235 (6th Cir. 2005) (Sutton, J., concurring) (observing that the fact-intensive nature of the applicable tests make it "difficult for a defendant to claim qualified immunity on the pleadings *before* discovery" (emphasis in original)); *see also Jacobs v. City of Chicago*, 215 F.3d 758, 775 (7th Cir. 2000) (Easterbrook, J., concurring) ("Rule 12(b)(6) is a mismatch for immunity and almost always a bad ground of dismissal."); *Chesser v. Sparks*, 248 F.3d 1117, 1121 (11th Cir. 2001) ("[Q]ualified is typically addressed at the summary judgment stage of the case."); *Grose v. Caruso*, 284 Fed. Appx. 279, 283 (6th Cir. 2008) ("[T]he standard for a 12(b)(6) motion is whether the allegations, if taken as true, could state a claim upon which relief may be granted, [and] dismissal of Appellants on the basis of qualified immunity is premature.").

In advancing its qualified immunity argument, Officer Defendants neither address the propriety of considering qualified immunity at this stage nor offer this Court any reason to depart from the Sixth Circuit's "general preference not to grant qualified immunity based only on the pleadings." *Moderwell v. Cuyahoga Cty., Ohio*, No. 20-3879, 2021 WL 1897949 (6th Cir. May 12, 2021) (quoting *Guertin v. State*, 912 F.3d 907, 917 (6th Cir. 2019)).  Thus, having no basis to contravene this preferred approach of the Sixth Circuit, the Officer's Motion to Dismiss based on Qualified Immunity is **DENIED**.

### IV. CONCLUSION

For the reasons set forth above, the Court **GRANTS IN PART** and **DENIES IN PART** each of the Defendants' Motions to Dismiss (ECF Nos. 66, 68).  Claims against NaphCare Inc., as well as the Individual Defendants in their official capacity are **DISMISSED**.  Claims against the Nurse and Officer Defendants in their personal capacity survive and thus Defendants' Motions to Dismiss on this basis is **DENIED**.

**IT IS SO ORDERED.**

                                                                              _____
                                                                              ALGENON L. MARBLEY
                                                                              CHIEF UNITED STATES DISTRICT JUDGE

**DATED: March 14, 2022**